**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAWN WOOD Sr.,** | **CIVIL ACTION** |
| **SHAWN WOOD Jr.,** | |
| **DEBORAH WOOD,** | |
| **SHARIFF WOOD,** | |
| **AMEER WOOD, and** | |
| **NAADIYAH WOOD,** | **NO. 14-4183** |
| **Plaintiffs,** | |
| | |
| **v.** | |
| | |
| **SOUTHEASTERN PENNSYLVANIA** | |
| **TRANSPORTATION AUTHORITY,** | |
| **ANDREW LACHOWICZ,** | |
| **SEPTA Police Officer,** | |
| **MATTHEW DLUGOSZ,** | |
| **SEPTA Police Officer, and** | |
| **CITY OF PHILADELPHIA,** | |
| **Defendants.** | |

**DuBois, J.**                                                                                           **May 5, 2016**

**M E M O R A N D U M**

## I.    INTRODUCTION

This is a civil rights action. Plaintiffs Shawn Wood Sr. and Shawn Wood Jr. assert claims

under 42 U.S.C. § 1983 against two officers employed by the Southeastern Pennsylvania

Transportation Authority ("SEPTA"), defendants Andrew Lachowicz and Matthew Dlugosz.

Specifically, they claim that Dlugosz and Lachowicz conducted illegal stops, searches, and

arrests, and used excessive force in violation of the Fourth, Fifth, Eighth, and Fourteenth

Amendments. Wood Sr. and Wood Jr. also claim that the officers' conduct was tortious under

state law. Members of their family who observed the incident, Deborah Wood, Shariff Wood,

Ameer Wood, and Naadiyah Wood, assert claims of intentional infliction of emotional distress.

All plaintiffs also seek relief against SEPTA and the City of Philadelphia for failure to train and

supervise.

Presently before the Court are the Motion for Summary Judgment filed by SEPTA, Lachowicz, and Dlugosz (the "SEPTA defendants"), and the separate Motion for Summary Judgment filed by the City of Philadelphia. For the reasons that follow, the Court grants the City's Motion, and grants in part and denies in part the SEPTA defendants' Motion.

## II.    BACKGROUND

The facts of this case as set forth in the parties' briefs and accompanying exhibits are summarized as follows. The facts are not contested except as otherwise noted.

On October 22, 2013, plaintiffs travelled in two separate vehicles, both owned by Wood Sr., on their way to dinner. Pls.' Br. at 1. Wood Jr. operated one vehicle, and Wood Sr. operated the other. Deborah Wood (Wood Jr.'s mother), Shariff Wood, Ameer Wood, and Naadiyah Wood (Wood Jr.'s siblings) were passengers in Wood Jr.'s vehicle. *Id.*

Both Wood Jr. and Wood Sr. had valid licenses to carry firearms. *Id.* at 2. At the time of the incident Wood Jr. had a Smith & Wesson handgun holstered on his hip, and also had a Glock 21 handgun locked in the glove compartment of his vehicle. SEPTA Defs.' Br. Ex. B ("Wood Jr. Dep.") at 67:12–20. Wood Sr. had a P45 Luger handgun holstered on his hip. SEPTA Defs.' Br. Ex. C ("Wood Sr. Dep.") at 33:2.

En route to dinner, plaintiffs stopped at a Hess gas station located at the intersection of I and Erie Avenues in Philadelphia, Pennsylvania. Pls.' Br. at 1. As the Wood family entered the gas station, an individual identified as Daniel Akita[1] drove through a red light, almost striking Wood Jr.'s car. *Id.* Akita followed the Woods' vehicles into the gas station. *Id.* Wood Jr. exited his vehicle and argued with Akita, who remained inside his vehicle. *Id.* at 2. According to plaintiffs, Akita brandished a firearm threateningly. *Id.* According to Akita, Wood Jr.

---

[1] The filings and exhibits sometimes refer to this individual as Daniel "Arita." The Court hereinafter refers to him as Daniel Akita. Akita is not a party to this litigation.

threateningly gestured to his hip where his pistol was holstered. SEPTA Defs.' Br. Ex. E ("Dlugosz Dep.") at 32:2–21.

Akita drove away from the gas station and flagged down SEPTA officer Dlugosz, who at the time was driving a marked police vehicle. Pls.' Br. at 2. Akita told Dlugosz that an individual at the gas station on I and Erie Avenues threatened him with a firearm, and Dlugosz drove to the gas station to investigate, followed by Akita. *Id.*

At the scene, Akita identified Wood Jr. as the individual who made the alleged threat. Dlugosz Dep. at 34:8–11. Dlugosz approached Wood Jr. and asked whether he was armed. *Id.* at 36:1–2. Wood Jr. stated that he was armed but had a valid license to carry his weapon. *Id.* at 36:4. The record is conflicted as to whether Wood Jr. surrendered his Smith & Wesson handgun to Dlugosz at that time, or later to a different officer.[2] Dlugosz asked to see Wood Jr.'s firearm license, but Wood Sr. instructed his son not to comply with Dlugosz's investigation. *Id.* at 36:13–21. Wood Sr. insisted that Dlugosz lacked jurisdiction and placed his arm between Dlugosz and Wood Jr. *Id.* at 37:22–24. Dlugosz called for backup and Wood Sr. retreated to his vehicle. *Id.* at 39:15–16.

Backup officers arrived, including SEPTA officer Lachowicz, several unidentified SEPTA officers, and several Philadelphia Police Department officers. Wood Jr. Dep. at 93:9–22. Philadelphia police officers handcuffed and frisked Wood Jr., but then removed the handcuffs

---

[2] Wood Jr. testified that Dlugosz recovered the Smith & Wesson handgun after their first encounter. Wood Jr. Dep. at 79:14–15, 83:16–17. But his father, Wood Sr., testified that Dlugosz "didn't take nothing off [Wood Jr.] after the first search. When he called backup, that's when they came and took the gun off of [Wood Jr.]." Wood Sr. Dep. at 31:8–18. Dlugosz denied seizing the firearm, stating that he was "not sure exactly" whether it was Lachowicz or Philadelphia police who seized the firearm. Dlugosz Dep. at 40:11–41:1 Official documentation states that Lachowicz recovered the firearm. SEPTA Defs.' Br. Exs. F, G, J. Lachowicz, however, testified that he "did not search" either Wood Jr. or Wood Sr.; "Philadelphia Police Department pulled both firearms . . . ." Pls.' Br. Ex. A ("Lachowicz Dep.") at 27:1–2, 9–10.

when it was determined that Wood Jr.'s license to carry was valid. *Id.* at 96:1–11. Thereafter Lachowicz allegedly approached Wood Jr. and conducted another pat-down search. *Id.* at 96:22–97:6.[3] According to Wood Jr., Lachowicz requested consent to search Wood Jr.'s car. *Id.* at 104:15–18. Wood Jr. refused, prompting Lachowicz to handcuff Wood Jr. and "slam" him against the car. *Id.* at 104:19–20. Lachowicz proceeded to remove Wood Jr.'s mother and siblings from the vehicle and searched the car in an allegedly destructive manner—"smash[ing]" electronic equipment and "tear[ing]" the seats open. *Id.* at 105:8–11; Wood Sr. Dep. at 46:6–8. Lachowicz recovered the Glock 21 handgun from the glove compartment. Wood Jr. Dep. at 105:12–14. Wood Jr. was then arrested on charges of making terroristic threats and placed in the back of a police vehicle. *Id.* at 105:23–24.

Wood Sr. was also searched, and the police recovered the P45 Luger handgun holstered on his hip. Wood Sr. Dep. at 33:2. Dlugosz allegedly shoved Wood Sr. into a vehicle and struck him three times in the abdomen with an object. *Id.* at 42:7–43:18. Wood Sr. was arrested on charges of hindering apprehension or prosecution.

According to plaintiffs, the trial court granted a Motion to Suppress in the criminal action against them and charges were dropped. Pls.' Br. at 3.[4] Plaintiffs brought the instant case under 42 U.S.C. § 1983, asserting that their Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated, and that they were the victims of several torts. Specifically, plaintiffs claim: wrongful arrest and detention (Count I), assault (Count II), false arrest and accusations (Count III), intentionally discriminatory and malicious utterances (Count IV), intentional infliction of emotional distress (Count V), and failure to supervise and train (Count VI). Counts I through IV

---

[3] Lachowicz denies having searched Wood Jr. or Wood Sr. Lachowicz Dep. at 27:1–2.

[4] The parties did not provide copies of the pertinent records from the criminal case and these records are unavailable.

seek relief on behalf of Wood Jr. and Wood Sr. against all defendants. Count V seeks relief on behalf of Deborah, Shariff, Ameer, and Naadiyah Wood against all defendants. Count VI seeks relief for all plaintiffs against SEPTA and the City. Following discovery, the SEPTA defendants' and City's Motions for Summary Judgment are fully briefed and ripe for the Court's decision.

## III.    LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A dispute of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A motion for summary judgment should be granted where "the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007). "[T]he non-moving party must show specific facts such that a reasonable jury could find in its favor[.]" *Id.*

## IV.    DISCUSSION

### A.    Claims Against Individual SEPTA Officers

The Court grants in part and denies in part the SEPTA defendants' Motion for Summary Judgment as to the claims asserted against officers Dlugosz and Lachowicz. Dlugosz and

Lachowicz are sued in their individual and official capacities. The Court grants the Motion as to all claims except the automobile-search claims and the excessive-force claims asserted against the officers in their individual capacities under the Fourth Amendment. Because "an official-capacity suit is . . . . to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), the SEPTA defendants' Motion for Summary Judgment against those officers in their official capacities is granted on the ground that such claims are duplicative of the claims against SEPTA. *See, e.g.*, *Thomas v. City of Chester*, No. 15-cv-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) (DuBois, J.). The Court also notes that the claims against SEPTA fail for the reasons set forth in Part IV.B. The Court addresses below the individual-capacity claims against officers Dlugosz and Lachowicz.

### 1. Applicable Law – Section 1983

To prevail on a Section 1983 claim against the defendants in their individual capacities, plaintiffs must demonstrate that defendants, acting under color of state law, deprived them of a right secured by the United States Constitution or federal law. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n.5 (1998)).

Wood Jr. and Wood Sr. claim that Dlugosz and Lachowicz violated their Fourth, Fifth, Eighth, and Fourteenth Amendment rights. The Court notes that all of plaintiffs' claims— including excessive force, false arrest, and malicious prosecution—are cognizable under the Fourth Amendment. Such claims may not be brought under the due-process clauses of the Fifth

and Fourteenth Amendments, *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013),

nor the Eighth Amendment, which applies only to constitutional claims arising "after sentence

and conviction." *Id.*

The individual officers each assert a qualified-immunity defense. Qualified-

immunity analysis proceeds in two steps, which can be taken in any order. The Court must

determine "(1) whether the plaintiff alleged sufficient facts to establish the violation of a

constitutional right, and (2) whether the right was 'clearly established' at the time of the

defendant's actions." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858

(3d Cir. 2014); *see Saucier v. Katz*, 533 U.S. 194 (2001). This inquiry "must be undertaken in

light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at

194. However, "there does not have to be 'precise factual correspondence' between the case at

issue and a previous case in order for a right to be 'clearly established[.]'" *Kopec v. Tate*, 361

F.3d 772, 778 (3d Cir. 2004). The question is "whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

**2.  The Jurisdiction of SEPTA Officers**

Plaintiffs rely, in significant part, on the assertion that SEPTA officers Dlugosz and

Lachowicz exceeded their jurisdiction. The Court rejects this argument for two reasons:

(a) Dlugosz and Lachowicz did not exceed their jurisdiction, and (b) the determination of

jurisdiction under state law is not dispositive of defendants' liability under federal law. The

Court concludes that defendants' status as SEPTA officers, standing alone, did not render their

conduct unreasonable under the Fourth Amendment, and is not actionable.

(a)  The Court concludes that the officers did not exceed their jurisdiction. A SEPTA

police officer's jurisdiction is defined by the Railroad and Street Railway Police Act:

7

> Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

22 Pa. Cons. Stat. Ann. § 3303. This statute has been interpreted to provide two sources of jurisdiction. First, SEPTA police officers have *primary* jurisdiction "in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority . . . ." Second, SEPTA police officers have *extraterritorial* jurisdiction anywhere in the Commonwealth while engaged in transportation-system business. *See Com. v. Bloom*, 979 A.2d 368, 370 (Pa. Super. Ct. 2009).

*Commonwealth v. Firman*, 813 A.2d 643 (Pa. 2002) is the only Pennsylvania Supreme Court decision to interpret that statute. *Firman* upheld the jurisdiction of a transit officer to make an arrest on a public highway. The Court held that there must be a "connection [to] the interests of the transportation system," but upheld the search because "the motorist's conduct on a public highway jeopardize[d] Port Authority personnel, property or passengers . . . ." *Id.* at 648. That danger created a "sufficient connection to transportation system business" to fall within the officer's extraterritorial jurisdiction. *Id.*

*Firman* is analogous to this case. According to Dlugosz, Akita stated that Wood Jr. threatened him with a firearm at the intersection of I and Erie Avenues. Dlugosz Dep. at 32:4–7. Officer Dlugosz knew that there is a SEPTA "bus stand" at that same intersection. *Id.* at 53:17–23 ("There's a 56 bus stand that's adjacent to the gas station."). Dlugosz and Lachowicz therefore responded to an emergency situation in an area where a SEPTA vehicle and SEPTA customers were either present or likely to arrive at any moment. Those circumstances "jeopardize[d] Port Authority personnel, property, or passengers," creating a "sufficient connection to transportation system business" to implicate extraterritorial jurisdiction under the Railroad and Street Railway Police Act. *Firman*, 813 A.2d at 648; c*f. Bloom*, 979 A.2d at 372.

8

Accordingly, the Court concludes that Dlugosz and Lachowicz had jurisdiction to proceed in this case under state law.

(b)      Moreover, SEPTA jurisdiction is a question of state law that does not alter the Court's Fourth Amendment analysis.[5] "The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." *Elkins v. United States*, 364 U.S. 206, 224 (1960). Otherwise, "linking Fourth Amendment protections to state law would cause them to 'vary from place to place and from time to time[.]'" *Virginia v. Moore*, 553 U.S. 164, 176 (2008) (quoting *Whren v. United States*, 517 U.S. 806, 815 (1996)).

On that basis courts have consistently found that an officer who executes an extra-jurisdictional search or seizure does not, on that basis alone, violate the Constitution. In *Winslow v. The Borough of Malvern PA*, this Court held as follows:

> Winslow's first alleged Fourth Amendment violation is that Douglas made the arrest outside of his jurisdiction. This alleged violation implicates provisions of the Pennsylvania Code limiting the jurisdiction of municipal police, 42 Pa.C.S.A. §§ 8951 et seq. Even assuming, *arguendo,* that Winslow's allegation is correct, a violation of Pennsylvania law is not a violation of the Fourth Amendment.

No. 08-cv-1890, 2009 WL 4609590, at *4 (E.D. Pa. Dec. 7, 2009) (DuBois, J.); *accord United States v. Chambers*, 597 F. App'x 707, 710 (3d Cir. 2015); *United States v. Sed*, 601 F.3d 224, 228 (3d Cir. 2010).

### 3.   Initial Seizure of Wood Jr.

When Dlugosz initially stopped Wood Jr. he did not violate Wood Jr.'s Fourth Amendment rights because, under *Terry v. Ohio*, 392 U.S. 1 (1968), Dlugosz had reasonable

---

[5] To the extent that plaintiffs claim that their federal due-process rights were violated by the officers' failure to follow state law, the same principle applies. "A state cannot be said to have federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993); *accord McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995).

suspicion to conduct an investigative stop based on information supplied by Akita. Specifically, Akita stated that "the person at the gas station, Hess gas station at I and Erie, threatened him with a gun. . . . [T]he actor made a motion to his waistband . . . ." Dlugosz Dep. at 32:4–17. The Court concludes that this information was reliable.

To conduct a *Terry* stop, the officer must have "reasonable suspicion to believe the individual may be engaged in criminal activity." *United States v. Gonzalez*, 630 F. App'x 157, 160 (3d Cir. 2015). "A determination of whether reasonable suspicion exists depends on the 'totality of the circumstances,' and must be based on a 'reasonable, articulable suspicion' that exists before the stop occurs." *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 127 (2000)). Reasonable suspicion can be based on the officer's personal observations, or on reliable information supplied by another person. *Adams v. Williams*, 407 U.S. 143, 147 (1972).

When information is supplied by another person, the Court must evaluate the reliability of that statement or tip. Courts consider several factors in doing so:

> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.
>
> (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.
>
> (3) The content of the tip is not information that would be available to any observer . . . .
>
> (4) The person providing the information has recently witnessed the alleged criminal activity.
>
> (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility[.]

*United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008).

Upon consideration of each factor, the Court concludes that the information supplied by Akita was sufficiently reliable to establish reasonable suspicion. First, Dlugosz and Akita communicated in person. "This is a stronger case than obtains in the case of an anonymous

10

telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene." *Adams*, 407 U.S. at 146. Second, Akita remained at the scene during the investigation and filed a statement with the police. SEPTA Defs.' Mot. Ex. H. Third, the content of the tip related to an alleged exchange that personally involved Akita. Fourth, Akita recently witnessed the alleged conduct, and was reporting what he had observed moments ago. And finally, Dlugosz was able to verify aspects of the tip by confirming the presence of the individual identified by Akita.

Based on the totality of the circumstances, the Court concludes that Dlugosz acted on the basis of a reliable tip and therefore had reasonable suspicion to conduct a *Terry* stop. Accordingly, there is no evidence of a constitutional violation and the Court grants the SEPTA defendants' Motion for Summary Judgment as to the claim against Dlugosz arising out of the initial seizure of Wood Jr.

### 4. Automobile Search

Plaintiffs claim that their constitutional rights were violated by Lachowicz's search of the automobile owned by Wood Sr. and operated by Wood Jr.[6] Although the automobile search was lawfully initiated, plaintiffs have offered sufficient evidence that Lachowicz caused unreasonable damage in the course of his search.

As a preliminary matter, the Court notes that Lachowicz initiated a lawful search. An officer may search the passenger compartment of a vehicle if the officer reasonably believes "that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). In this case, officers confirmed that Wood Jr.

---

[6] Lachowicz denies having searched Wood Jr. or Wood Sr., and does not discuss the automobile search in his deposition. Lachowicz Dep. at 27:1–2. However, the Court views the record in a light most favorable to the non-moving parties and credits the testimony of Wood Jr. and Wood Sr.

was armed when they recovered his Smith & Wesson handgun, and Wood Jr. was sitting unrestrained in the driver's seat with access to any additional weapons concealed in the vehicle. It was therefore reasonable for Lachowicz to take "preventive measures to ensure that there were no other weapons within [Wood Jr.'s] immediate grasp before permitting him to reenter his automobile." *Id.* at 1051; *see United States v. Bush*, 138 F. App'x 946, 947 (9th Cir. 2005) ("[B]ecause the officers encountered a weapon outside the car, they were entitled to perform a protective search of the vehicle to ensure no additional weapons were present."). Significantly, Lachowicz recovered a second firearm, a Glock 21 handgun, in that search of the vehicle.

However, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful . . . ." *United States v. Ramirez*, 523 U.S. 65, 71 (1998); *see also Tarpley v. Greene*, 684 F.2d 1, 9 (D.C. Cir. 1982). An initially reasonable search "can be vitiated . . . by the manner in which the police conducted the search . . . ." *United States v. Penn*, 647 F.2d 876, 882 (9th Cir. 1980); *see also Terry*, 392 U.S. at 18 ("[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope."). For an officer to be liable for damaging property during an otherwise reasonable search, "it must be established that the police acted unreasonably or maliciously in bringing about the damage." *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995). Mere negligence is not enough. *Id.*

In this case, Wood Jr. and Wood Sr. each testified that the automobile search caused unreasonable property damage. Wood Jr. testified that Lachowicz "smashed my touch screen radio that I had in there, my GPS. He just started throwing things on the ground." Wood Jr. Dep. at 105:8–11. Wood Sr. testified that the officers "ransacked" the vehicle: "TV monitor, DVD player screen, ripped the seat, broke the glove compartment." Wood Sr. Dep. at 46:6–8. On the

basis of that testimony, a reasonable jury could conclude that Lachowicz caused unreasonable property damage when searching Wood Jr.'s vehicle.

Having determined that there is sufficient evidence of a constitutional violation, the Court further concludes that the relevant right was "clearly established" and rejects Lachowicz's qualified-immunity defense.

The right to be free from an unreasonably destructive search was clearly established by Supreme Court precedent. *See, e.g.*, *Ramirez*, 523 U.S. at 71. This is true not only as a "broad general proposition," but also "in light of the specific context of the case[.]" *Saucier*, 533 U.S. at 194. A reasonable officer would know that, in conducting a search of an automobile it would be unreasonable to "smash[ ]" or "rip[ ]" property of the suspect that has no connection to the object of the search. Accordingly, the Court rejects defendants' qualified-immunity defense and denies the SEPTA defendants' Motion for Summary Judgment as to this claim.

### 5. Excessive Force

The Court concludes that Wood Jr.'s excessive-force claim against Lachowicz and Wood Sr.'s excessive-force claim against Dlugosz are supported by sufficient evidence to survive summary judgment.

When evaluating an excessive-force claim, the Court must determine whether the officer's "actions [were] objectively reasonable in light of the facts and circumstances confronting him, regardless of his underlying intent or motivation." *Graham*, 490 U.S. at 397. Whether the nature and extent of force used was "reasonable" will depend on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting or attempting to evade arrest by flight." *Id.* at 396.

13

(a)      *Wood Jr. v. Lachowicz.* Wood Jr. testified that Lachowicz "slammed" him against

the car. Defendants argue that Wood Jr. suffered no physical injury, and also argue that the Court

should disregard Wood Jr.'s "self-serving" testimony. The Court rejects defendants' arguments.

First, an excessive-force claim does not require proof of physical injury. *Sharrar v.

Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Even so, Wood Jr. testified that he suffered "severe

shoulder pain," "a little bit of chest pains." Wood Jr. Dep. at 112:16–18. Wood Jr. also sought

psychological counseling. *Id.* at 113:6–114:14.

Second, viewing the record in a light most favorable to plaintiffs, a reasonable jury could

conclude that force against Wood Jr. was unreasonable because he was not "actively resisting or

attempting to evade arrest by flight." *Graham*, 490 U.S. at 397. To the contrary, Wood Jr.

testified that he voluntarily submitted to several searches.[7] *See, e.g.*, *Ference v. Twp. of

Hamilton*, 538 F. Supp. 2d 785, 810 (D.N.J. 2008) ("[A] reasonable jury could find that the

[incident] had been [defused] and Plaintiff was cooperating with the police officers," vitiating

any "need for the level of force allegedly applied"). In addition, Wood Jr. testified that he was

"slammed" into the vehicle directly after he refused consent to a search of his vehicle. A

reasonable jury could conclude that the "slam" was reprisal against Wood Jr. for exercising his

right to withhold consent to a search. Based on the totality of the circumstances, a reasonable

jury could thus conclude that Lachowicz's use of force against Wood Jr. was objectively

unreasonable.

(b)      *Wood Sr. v. Dlugosz.* Wood Sr. testified that Dlugosz "shoved" him against a

vehicle and struck him "three or four times" in the abdomen "with an object in his hand." Wood

---

[7] Lachowicz, however, testified that "Wood Jr., had to be physically pulled from the V of the door of his car," Lachowicz Dep. at 26:12–13. The record thus presents a material dispute of fact that must be resolved by the jury.

Sr. Dep. at 42:7–14. Defendants argue, however, that they are entitled to judgment as a matter of law because "the father was impeding and harassing the Defendant Officers while they attempted to investigate and secure the weapons at the scene." SEPTA Defs.' Br. at 16. The Court rejects this argument.

Based on the totality of the circumstances, a reasonable jury could conclude that Dlugosz used excessive force against Wood Sr. While there is no dispute that Wood Sr. was obstructive at the beginning of the encounter, Wood Sr. thereafter retreated to his vehicle. *See* Wood Jr. Dep. at 84:6–8. At the time force was allegedly used against Wood Sr., there is no evidence that he was interfering with the investigation or physically resisting arrest. And even if there were such evidence, a reasonable jury could still conclude that it was objectively unreasonable to strike Wood Sr. multiple times with an object in hand, without first using lesser force. *See Green v. New Jersey State Police*, 246 F. App'x 158, 161–62 (3d Cir. 2007) (holding that "it would not have been reasonable" to grab a suspect's neck "without first using lesser force," or to strike a suspect twice with a flashlight after the suspect refused to exit a vehicle).

(c)     *Qualified Immunity.* Because there is sufficient evidence of constitutional violations, the Court proceeds to assess whether the relevant rights were clearly established. The Court concludes that they were.

A reasonable officer would be guided by several factors articulated by the Court of Appeals, "including the potential threat posed by the suspect, whether the suspect was resisting arrest, armed, or attempting to flee, and the ratio of officers to suspects[.]"*Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006). Based on the applicable law, Wood Jr. had a clearly established right not to be slammed against his vehicle. Viewing the record in a light most favorable to Wood Jr., he voluntarily submitted to multiple searches, was not attempting to flee or otherwise

15

resist arrest, was significantly outnumbered by police officers, and exercised his right to withhold consent to the automobile search. *See Ference*, 538 F. Supp. 2d at 810 (denying qualified immunity because "there was simply no justification" to shove plaintiff and twist his arms). Similarly, Wood Sr. had a clearly established right not to be struck multiple times, even if he argued with Dlugosz. A reasonable officer would know that such conduct was unlawful. *See Green*, 246 F. App'x at 163 (denying qualified immunity where, *inter alia*, an officer struck a suspect twice with a flashlight).

The Court therefore rejects defendants' qualified-immunity defense and denies the SEPTA defendants' Motion for Summary Judgment as to the excessive-force claims.

### 6.   False Arrests

Both Wood Jr. and Wood Sr. were arrested, and eventually charged. Plaintiffs claim that they were falsely arrested. The Court concludes, however, that the false-arrest claims fail because no reasonable jury could find probable cause lacking on the present record.

"The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995). Although the question of probable cause is usually one for the jury, a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would

not support a contrary factual finding," and may enter summary judgment accordingly. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

The record is conflicted as to when Wood Jr. and Wood Sr. were arrested, and by whom.[8] But assuming that Dlugosz and/or Lachowicz executed the arrests, the Court concludes that the officers had probable cause.

(a)  *Arrest of Wood Jr.* Wood Jr. was arrested for making a terroristic threat. *See* 18 Pa. Cons. Stat. Ann. § 2706; SEPTA Defs.' Mot. Ex. J. Probable cause to arrest Wood Jr. was established by Akita's tip in combination with the officers' subsequent investigation.

"When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Sharrar*, 128 F.3d at 818; *see Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000) ("[A] credible report . . . alone sufficiently established probable cause"). However, probable cause is not established if there is "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers . . . ." *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000).

In this case, the officers were able to confirm specific details provided by Akita. This case is therefore similar to *Adams v. Williams*, 407 U.S. 143, 148–49 (1972), where "the policeman found [the suspect] in possession of a gun in precisely the place predicted by the informant," and other details that "tended to corroborate the reliability" of the tip. At the time of

---

[8] *See* Wood Jr. Dep. at 105:22 – 106:22 (stating that "they" placed Wood Jr. into the back of a police vehicle driven by an unidentified SEPTA sergeant); Wood Sr. Dep. at 40:9–41:9 (stating that the Philadelphia police "handcuffed me" after Dlugosz told them to "lock him up," but then "SEPTA came over and handcuffed me and put me in their thing."); *id.* at 47:12–19 (stating that "[t]hey, the Philadelphia police . . . locked me up"); Deborah Wood Dep. at 64:4–6, 65:13 (stating that the SEPTA police handcuffed Wood Sr., but she could not tell who handcuffed Wood Jr.); Dlugosz Dep. at 53:9–12 (stating that "[i]t was either the Philadelphia police or Lachowicz" who handcuffed "him"); SEPTA Defs.' Br. Ex. J, at 4 (identifying the arresting officers as Dlugosz (W2) and Lachowicz (W3)).

arrest, the officers were not aware of any countervailing evidence of Akita's unreliability besides Wood Jr.'s accusations. Thus, Akita's statement, combined with the recovery of a firearm, established probable cause to arrest Wood Jr.

(b)  *Arrest of Wood Sr.* Wood Sr. was arrested for hindering apprehension or prosecution. *See* 18 Pa. Cons. Stat. Ann. § 5105; SEPTA Defs.' Mot. Ex. J. The officers had probable cause to conduct a custodial arrest based on conduct that they personally observed. As noted above, Wood Sr. instructed his son not to cooperate with the investigation and physically placed himself between Dlugosz and Wood Jr. The officers thus had probable cause to arrest Wood Sr. for hindering apprehension or prosecution.

As to both Wood Jr.'s and Wood Sr.'s false-arrest claims, the Court concludes that there is no evidence of a constitutional violation. The Court therefore grants the SEPTA defendants' Motion for Summary Judgment as to the false-arrest claims asserted against Lachowicz and Dlugosz.

### 7.  Malicious Prosecution

The Court concludes that defendants are entitled to judgment as a matter of law on plaintiffs' malicious-prosecution claims.

To prove malicious prosecution, "a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Wheeler v. Wheeler*, No. 15-1981, 2016 WL 231581, at *2 (3d Cir. Jan. 20, 2016) (quoting *Johnson v. Knorr,* 477 F.3d 75, 81–82 (3d Cir. 2007)).

Lack of probable cause "is an element of the *prima facie* case," and "the absence of that element is . . . fatal" to plaintiffs' malicious prosecution claim. *Wheeler*, 2016 WL 231581, at *2 n.8. Having concluded that probable cause was established, plaintiffs' malicious-prosecution claims fail as a matter of law and the Court grants the SEPTA defendants' Motion for Summary Judgment as those claims.

**8. State-Law Claims**

Though each Count in plaintiffs' Complaint is denominated as a federal claim under Section 1983, the parties and Court construe the Complaint as also asserting state-law tort claims: false imprisonment, assault, defamation, and intentional infliction of emotional distress.[9] The Court concludes that state-law claims asserted against Dlugosz and Lachowicz are barred by state sovereign immunity.

The Pennsylvania Sovereign Immunity Act provides as follows:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa. Cons. Stat. Ann. § 2310. This immunity is waived by statute in limited circumstances not applicable in this case.[10]

---

[9] The Court construes plaintiffs' claims for "false arrest" as claims for false imprisonment because false arrest "technically is not a tort." *Belcher v. United States*, 511 F. Supp. 476, 482 (E.D. Pa. 1981). The Court further construes plaintiffs' claims for "false accusations" and "malicious utterances" as defamation claims.

[10] 42 Pa. Cons. Stat. Ann. § 8522 waives sovereign immunity for (1) vehicle liability, (2) medical-professional liability, (3) care, custody, or control of personal property, (4) Commonwealth real estate, highways, and sidewalks, (5) potholes and other dangerous conditions, (6) care, custody, or control of animals, (7) liquor store sales, (8) National Guard activities, and (9) toxoids and vaccines.

SEPTA qualifies as a Commonwealth party within the meaning of the Sovereign Immunity Act. *Toombs v. Manning*, 835 F.2d 453, 463 (3d Cir. 1987). Dlugosz and Lachowicz are thus covered by the Act as Commonwealth "officials and employees" if they were acting "within the scope of their duties." [11] Because Dlugosz and Lachowicz acted within their statutory jurisdiction, *see supra* Part IV.A.2, the Court concludes that they were acting "within the scope of their duties." Thus, the state-law claims against them are barred by the Pennsylvania Sovereign Immunity Act, and the Court grants the SEPTA defendants' Motion for Summary Judgment as to those claims.

## B. CLAIMS AGAINST SEPTA

The Court grants the SEPTA defendants' Motion for Summary Judgment as to the claims asserted against SEPTA. The Section 1983 claims fail under *Monell*, and the state-law claims are barred by sovereign immunity.

### 1. Section 1983 Claims

SEPTA is "treated as a municipal agency when determining its liability, if any," under Section 1983. *Brown v. SEPTA*, 539 F. App'x 25, 27 (3d Cir. 2013). Plaintiffs' claims against SEPTA must, therefore, satisfy *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Graham*, 473 U.S. at 166. To survive summary judgment plaintiffs must provide

---

[11] Employees of municipal agencies remain liable for intentional torts under the Pennsylvania Political Subdivision Tort Claims Act. *See* 42 Pa. Cons. Stat. Ann. §§ 8541, 8550; *infra* Part IV.C.2. However, Lachowicz and Dlugosz are Commonwealth employees covered by the Pennsylvania Sovereign Immunity Act. 1 Pa. Cons. Stat. Ann. § 2310. That Act provides immunity for Commonwealth employees for both intentional torts and negligent acts. *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010).

evidence that an alleged constitutional violation arose out of the execution of an official policy or custom. *Monell*, 436 U.S. at 694.[12]

In this case, plaintiffs assert in their summary judgment response that SEPTA failed to adequately train and supervise its police officers as to the limited statutory jurisdiction of SEPTA officers.[13] Plaintiffs claim that "if SEPTA knows that their police officers are routinely operating outside their jurisdiction but 'look the other way,' they are improperly supervising their employees and are therefore liable under *Monell*." The Court rejects this argument.

Section 1983 only "provides a remedy for violations of federal, not state or local, law." *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 99 (3d Cir. 2011). Because the issue of SEPTA officer jurisdiction is purely one of state law, plaintiffs have alleged, at most, a failure to train officers to abide by a state statute. That claim is not cognizable under Section 1983. "[W]hile some of the language contained in the complaint might mirror a *Monell*-type claim, the complaint lacks a fundamental element of such a claim, namely an alleged violation of federal law." *Bray v. Cuyahoga Cty. Bd. of Comm'rs*, No. 11-cv-159, 2011 WL 1085782, at *2 (N.D. Ohio Mar. 22, 2011). The Court thus grants SEPTA's Motion for Summary Judgment as to plaintiffs' *Monell* claims based on a claimed lack of jurisdiction of the SEPTA officers.

---

[12] Plaintiffs' claims against SEPTA in Counts I–V therefore fail as a matter of law, and the Court grants the SEPTA defendants' Motion for Summary Judgment as to those claims.

[13] Count VI of plaintiffs' Complaint asserts a claim for inadequate training and/or supervision as to officers' use of, *inter alia*, excessive force, false arrests, and false charges. Following discovery, however, plaintiffs shifted their *Monell* theory to rely solely on SEPTA jurisdiction. The Court notes that plaintiffs have not developed a record to support their *Monell* claim as originally pled. Specifically, they have not provided any evidence that the allegedly defective training or supervision policies were "so likely to result in the violation of constitutional rights" that a final decision-maker would have been deliberately indifferent to the need for "more or different" policies. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Thus, SEPTA's Motion for Summary Judgment is granted as to all such claims.

### 2.  State-Law Claims

For the reasons set forth in Part IV.A.8, SEPTA is immune from plaintiffs' state-law claims pursuant to the Pennsylvania Sovereign Immunity Act. 1 Pa. Cons. Stat. Ann. § 2310; *Toombs*, 835 F.2d at 463. Accordingly, the Court grants the SEPTA defendants' Motion for Summary Judgment as to the tort claims asserted against SEPTA.[14]

### C.  CLAIMS AGAINST THE CITY OF PHILADELPHIA

The Court grants the City of Philadelphia's Motion for Summary Judgment because plaintiffs' Section 1983 claims fail under *Monell*, and the tort claims against the City are barred by immunity under state law.

### 1.  Section 1983 Claims

Plaintiffs' Section 1983 claim against the City must satisfy *Monell*, 436 U.S. at 694. Plaintiffs *Monell* claim against the City fails for the same reasons set forth in Part IV.B.1. Specifically, the claim that the City failed to train and/or supervise its officers as to the jurisdiction of SEPTA police does not implicate the violation of a federally protected right, and is therefore not cognizable under Section 1983. Accordingly, the Court grants the City's Motion for Summary Judgment as to plaintiffs' Section 1983 claims asserted against the City.

### 2.  State-Law Claims

The Court grants the City's Motion for Summary Judgment as to plaintiffs' tort claims because the City is entitled to immunity under state law.

---

[14] Plaintiffs argue that SEPTA does not have sovereign immunity based on *Goldman v. Se. Pa. Transp. Auth.*, 57 A.3d 1154 (Pa. 2012). However, *Goldman* stands for the proposition that SEPTA is not an "arm of the state" for purposes of immunity under the Eleventh Amendment. *Accord Cooper v. Se. Pa. Transp. Auth.*, 548 F.3d 296 (3d Cir. 2008). That issue is distinct from whether SEPTA has immunity from state-law claims under the Pennsylvania Sovereign Immunity Act. *Toombs* held that SEPTA is entitled to immunity from state-law claims under the Sovereign Immunity Act.

The Pennsylvania Political Subdivision Tort Claims Act protects local government units from certain state-law claims. The Act provides as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. Cons. Stat. Ann. § 8541. This immunity is waived by statute in limited circumstances not applicable in this case. *See* 42 Pa. Cons. Stat. Ann. § 8542.

The City of Philadelphia is immune from intentional tort claims under the Political Subdivision Tort Claims Act. *See, e.g.*, *Win & Son, Inc. v. City of Philadelphia*, No. 13-cv-5977, 2016 WL 538213, at *13 (E.D. Pa. Feb. 11, 2016); *Panas v. City of Philadelphia*, 871 F. Supp. 2d 370, 375–76 (E.D. Pa. 2012). The state-law claims asserted against the City are intentional torts covered by the City's immunity under state law.[15] Accordingly, the Court grants the City's Motion for Summary Judgment as to plaintiffs' tort claims.

## V.    CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment is granted, and the SEPTA defendants' Motion for Summary Judgment is granted in part and denied in part. Specifically, the Court grants the SEPTA defendants' Motion as to all claims asserted against SEPTA, and all claims asserted against Dlugosz and Lachowicz except those claims arising out of the automobile search and the use of excessive force.

The Section 1983 claims that remain in the case, all individual-capacity claims under the Fourth Amendment, are as follows: (1) Wood Jr.'s and Wood Sr.'s claims against Lachowicz

---

[15] No City employees are named as defendants. With respect to claims against City employees, the Pennsylvania Political Subdivision Tort Claims Act does not provide immunity for intentional torts. *See supra* note 11. However, "this does not remove the immunity of the local agency, here the City." *Wakshul v. City of Philadelphia*, 998 F. Supp. 585, 588 (E.D. Pa. 1998).

arising out of the automobile search; (2) Wood Jr.'s excessive-force claim against Lachowicz; and (3) Wood Sr.'s excessive-force claim against Dlugosz.

An appropriate order follows.